**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **NICHOLAS D.,**[1] <br><br>        **Plaintiff,** <br><br>   v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br>        **Defendant.** | **Case No. 23–cv–03139–ESK** <br><br><br> **OPINION** |

**KIEL, U.S.D.J.**

    **THIS MATTER** comes before the Court on plaintiff Nicholas D.'s appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration denying plaintiff's application for Social Security Disability Insurance Benefits.  For the following reasons, the Commissioner's decision will be **VACATED** and **REMANDED**.

## PROCEDURAL HISTORY[2]

    In September 2020, plaintiff filed an application seeking Social Security Disability Insurance Benefits, alleging an onset of disability on June 11, 2019. (R. at 11, 509–11.)   The application was denied initially on March 17, 2021, (R. at 11, 512–16), and denied again upon reconsideration on June 14, 2021. (R. at

---

    [1] Due to the significant privacy concerns in Social Security cases, any non-governmental party will be identified and referenced solely by first name and last initial in opinions issued in the United States District Court for the District of New Jersey.   *See* D.N.J. Standing Order 2021-10.

    [2] Because the record is voluminous, the Court sets forth only those facts that are necessary for context and are relevant to the issues on appeal.   The Court cites to the administrative record, (ECF No. 5), as "R."   Background facts and medical history are set forth in a separate section below.

11, 518–22.)   Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).   (R. at 11, 523.)   On January 3, 2022, a hearing was held before ALJ Kenneth Ayers.   (R. at 11, 467–91.)   On March 1, 2022, ALJ Ayers issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act.   (R. at 8–26.)   Plaintiff appealed the ALJ's decision to the Appeals Council on May 3, 2022.   (R. at 587–88.)   The Appeals Council denied plaintiff's request for review on April 19, 2023, (R. at 1–4), rendering the ALJ's decision final.

On June 7, 2023, plaintiff timely appealed the matter to this Court seeking review pursuant to 42 U.S.C. § 405(g).   (ECF No. 1.)   The Commissioner filed the administrative record on October 31, 2023.   (ECF No. 5.)   Plaintiff filed a brief stating the basis for his appeal on January 25, 2024.   (ECF No. 8, Pl.'s Br.)   The Commissioner filed a responsive brief on March 11, 2024.   (ECF No. 12, Opp'n Br.)   Plaintiff filed a reply brief on March 25, 2024.   (ECF No. 13, Reply Br.)   The case was reassigned to me on March 28, 2024.   (ECF No. 14.)

## STANDARD OF REVIEW

When reviewing a final decision of an ALJ as to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence."   *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (citation omitted).   It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."   *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation omitted).   Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).   However, while the ALJ is not required "to use particular language or adhere to a particular format in

2

conducting his analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000)).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (citation omitted). The Court's review of legal issues is plenary. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). Before the ALJ, "[t]he burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citation omitted). The analysis proceeds as follows:

At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id*. Otherwise, the ALJ moves on to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id*. §§404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id*. §§404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id*. §§404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" [*Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).] If the claimant's impairments do, he is disabled. 20 C.F.R. §§404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id*. §§404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id*. §§404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id*. §§404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] … age, education, and work experience[.]" *Id*. §§404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not

disabled.    20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02.

The plaintiff bears the burden on appeal of showing not merely that the ALJ erred, but that the error was harmful.    As the Supreme Court has said regarding judicial review of a governmental agency decision, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."    *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see also Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").    That is, the plaintiff must "explain[] … how the … error to which he points could have made any difference."    *Shinseki*, 556 U.S. at 413.

## FACTUAL BACKGROUND

### I.    PLAINTIFF'S FAMILY, EDUCATIONAL, MEDICAL, AND WORK HISTORY

Plaintiff Nicholas D. was born on March 26, 1976, (R. at 473), making him 43 years old at the alleged onset date and 45 at the time of the ALJ's decision. At the time of his hearing, he lived in Old Bridge, New Jersey, with his wife and six-year-old daughter.  (R. at 1, 473.)    Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024, meaning that he had to establish disability on or before that date to be entitled to benefits.  (R. at 12.)

Plaintiff was injured on his job as an ironworker in New York City.   (R. at 17, 1170.)   On June 11, 2019, he was operating a drill on a scissor lift with his arms outstretched when an accident caused the drill to reverberate back into his body.  (R. at 17, 473–74, 1170.)   The force caused extensive injuries to his neck, back, and shoulders.  (*Id.*)   Plaintiff testified that he underwent one surgery to his neck, two to his back, and one to each shoulder, with another

shoulder surgery scheduled shortly after his hearing.   (R. at 476–480; Pl.'s Br. pp. 7–16.)[3]

As of the date of plaintiff's hearing, the outcomes of the various surgeries were a mixed bag.   The surgery to plaintiff's neck appears to have been successful.   (R. 478–79.)   Although plaintiff testified that he still felt sharp, reverberating pain in his neck if he picked up something as light as a gallon of milk, he also stated that his neck "happens to be okay."   (*Id*.)   Plaintiff did not testify about the result of his back surgeries, but medical records indicate that he was happy with the results of at least the first one.   (*See, e.g.*, R. at 1115, 1849.)   Plaintiff fared less well with his shoulders.   His left shoulder suffered a "significant labral tear," among other damage, and surgery had helped only "somewhat" to relieve "excruciating" pain.   (R. at 476–77.)   His right shoulder similarly suffered a "severe labral tear," which required five surgically implanted anchors to put back together.   (R. at 477.)   Pain in the right shoulder had remained "tough," and plaintiff had another surgery scheduled to further repair the right shoulder.   (R. at 477–78.)

Plaintiff testified that his injuries continued to degrade his quality of life. Physical therapy had given him better range of motion.   (R. at 481.) Otherwise, however, the ongoing pain has been "frustrating."   (R. at 482.) Plaintiff testified that he cannot stand or sit for more than five or ten minutes without having to switch positions.   (*Id*.)   He cannot lift more than five or ten pounds without "sharp pain."   (R. at 483.)   Doctors administered numerous injections, (*see* Pl.'s Br. pp. 12–16, 18–20), and prescribed him medications ranging from muscle relaxers to opioid painkillers, which helped him "move around and get through the day" but did not fully relieve the pain.   (R. at 483.) As a result, plaintiff reported rarely leaving the house.   (R. at 483–84.)   He

---

[3] All citations to specific pages of the parties' briefs use the page numbers generated automatically by the ECF system.

would occasionally join his wife on a trip to the grocery store or pick his daughter up from school, but driving was "[o]ne of the worst positions" for his pain.   (*Id.*)   He was unable to help with chores around the house or play with his daughter.   (R. at 478, 484.)   Plaintiff reported that his sleep was "horrendous" and "the worst part" of his physical condition because, at best, his sleep was "on and off."   (R. at 484–85.)   Asked whether he could perform a sitting job eight hours a day, five days a week, plaintiff responded that he could not.   (R. at 485.)   "Because I couldn't focus," he testified.   "[I]t feels like I got a pencil stuck in my back.   It's a lot of pain, so it's hard to focus and I got to constantly get myself into a position and a different position.   Sitting is tough. Sitting for a while is not easy."   (*Id.*)

Prior to his work as an ironworker, plaintiff was a director of business development for a medical transportation company for roughly nine years.   (R. at 475.)   The core responsibilities of that role were as a sales account manager, and plaintiff testified that he moved around frequently to lift boxes and assist ambulance crews with lifting patients.   (R. at 475–76.)

## II.   THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 11, 2019.   (R. at 14.)

At step two, the ALJ found that plaintiff has both severe and non-severe impairments. Plaintiff's severe impairments are spine disorder, bilateral shoulder internal derangement, bilateral carpal tunnel syndrome, and obesity. (*Id.*)   Plaintiff's hypertension is a non-severe impairment.   (*Id.*)

At step three, the ALJ found that plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (R. at 14–15.)

At step four, the ALJ found that during the relevant period, plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b), with exceptions. Concerning *exertional* limitations, the claimant is capable of lifting 20 pounds occasionally and 10 pounds frequently; and carrying 20 pounds occasionally and 10 pounds frequently. The claimant is capable of sitting for 6 hours, standing for 6 hours, walking for 6 hours in an 8-hour workday. The claimant can push/pull as much as he can lift/carry; but the claimant cannot operate hand controls for pushing/pulling. Concerning *manipulative* limitations, the claimant can reach occasionally on the left and the right. He can handle items occasionally with the left hand and can handle items occasionally with the right hand. He can finger occasionally with the left and right hands. Concerning *postural* limitations, the claimant can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; stoop occasionally, kneel occasionally, crouch occasionally, and never crawl. Concerning *environmental* limitations, the claimant can never work at unprotected heights and never work around hazardous moving mechanical parts.

(R. at 15 (emphasis in original).)

Crediting the testimony of a vocational expert, the ALJ further found at step four that plaintiff was able to perform his past relevant work as a sales representative in motor transportation as that job is generally performed—not as plaintiff actually performed it in the past. (R. at 20–21.) Accordingly, the ALJ concluded that plaintiff was not disabled and did not proceed to step five. (R. at 21.)

## DISCUSSION

Plaintiff raises two challenges on appeal. First, he argues that the ALJ improperly discounted the opinions of plaintiff's treating physicians, resulting in an RFC that was not based on substantial evidence. (Pl.'s Br. pp. 28–39.) Second, he contends that the ALJ failed to properly evaluate plaintiff's

testimony about his subjective symptoms.  (*Id*. pp. 39–41.)  I consider these arguments in turn and find that both warrant remand.

## I.  EVALUATION OF PLAINTIFF'S MEDICAL SOURCE OPINIONS

For claims filed after March 27, 2017, as here, the Commissioner is required to consider any medical opinions or prior administrative medical findings provided by a plaintiff's medical sources.  20 C.F.R. §404.1520c(a).  Further, the Commissioner must "articulate in our determination or decision how persuasive we find" the medical opinions or findings.  *Id*. §404.1520c(b).  ALJs consider five factors when judging the persuasiveness of a medical opinion or finding—supportability, consistency, relationship with the claimant, specialization, and "other factors."  *Id*. §404.1520c(c).  The first two factors are the "most important" and, unlike the other factors, an ALJ *must* discuss them in his decision.  *Id*. §404.1520c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors.") (emphasis added).  As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id*. §404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id*. §404.1520c(c)(2).

Plaintiff argues that the ALJ committed harmful error in improperly discounting the opinions of two of plaintiff's treating physicians, both of whom suggested that plaintiff has functional limitations that are more restrictive

than those included in his RFC. (Pl.'s Br. pp. 28–39.)   The doctors are Dr. Sheref Hassan, an orthopedic surgeon, and Dr. Shady Hassan, a pain specialist. (*Id*. pp. 23–26.)[4]   Whereas the ALJ determined that plaintiff had the RFC to both lift and carry 20 pounds occasionally and ten pounds frequently, orthopedist Dr. Hassan opined that plaintiff could lift and carry 20 pounds occasionally but that he could not carry any amount of weight frequently.   (R. at 15, 19, 1239.)   Pain specialist Dr. Hassan, meanwhile, opined that plaintiff could lift and carry 20 pounds rarely and ten pounds frequently.   (R. at 20, 2170.)   Next, whereas the ALJ determined that plaintiff had the RFC to sit, stand, and walk for six hours in an eight-hour workday and stoop, kneel, and crouch occasionally, pain specialist Dr. Hassan indicated that plaintiff could sit, stand, and walk for less than two hours per workday and stoop or crouch rarely. (R. at 15, 2170–71.)   Finally, the ALJ did not include in the RFC that plaintiff would occasionally have to miss work due to his medical conditions.   Pain specialist Dr. Hassan, in contrast, estimated that plaintiff would have to miss four days of work per month.   (R. at 2171.)

Plaintiff contends that the manner in which the ALJ discounted the doctors' opinions was improper because the ALJ did not adequately explain how he considered the supportability and consistency factors.   (Pl.'s Br. pp. 31–39.) The ALJ stated that he considered an "Upper Extremity Impairment Questionnaire" completed by orthopedist Dr. Hassan, (R. at 1236–42), and found the opinions expressed there "somewhat persuasive."   (R. at 19).   The ALJ explained:

> Regarding supportability, these opinions are based on examination of the claimant from December 5, 2019[,] to October 6, 2021, by the claimant's own medical source. However, the questionnaire does not provide a clear

---

[4] To avoid confusion, I will refer to these doctors as orthopedist Dr. Hassan and pain specialist Dr. Hassan.

> rationale with evidence for each opinion about limitations. For instance, the questionnaire does not explain why the claimant would be limited to lifting and carrying 0 to 5 pounds or 5 to 10 pounds only occasionally rather than frequently. Regarding consistency with the overall record, these opinions are somewhat consistent with the record, which reflects that the claimant is limited to light work, subject to the additional limitations specified in the residual functional capacity finding above (*see, e.g.*, Exhibits 17F at 1-2; 23F at 1-2).

(*Id*.)   Likewise, the ALJ considered a "Physical Residual Functional Capacity Questionnaire" completed by pain specialist Dr. Hassan, (R. at 2168–72), and found the opinions expressed there "not persuasive."   (R. at 20.)   The ALJ explained:

> Regarding supportability, these opinions are based on examination of the claimant over a period of approximately 2 years by the claimant's own medical source.   However, this questionnaire does not provide a clear rationale with evidence for each opinion about limitations.   Also, the records from this medical provider do not appear to be supportive of such great limitations. For example, examination records by Dr. Hassan show some reduced strength and positive testing for problems, but also appear to show improvement in terms of pain in the cervical spine and shoulders (*see* Exhibit 23F). Regarding consistency with the overall record; overall, these opinions are not consistent with the record, which reflects that the claimant is limited to light work, subject to the additional limitations specified in the residual functional capacity finding above (*see, e.g.*, Exhibits 17F at 1-2; 23F at 1-2).

(*Id*.)

I agree with plaintiff that the ALJ committed at least one harmful error when discounting the doctors' medical opinions.   I also find that in other parts of his decision, the ALJ did not sufficiently explain his reasons for discounting the medical opinions, rendering me unable to conduct a "meaningful review" of

the decision.  *See Jones*, 364 F.3d at 505.  I begin with a discussion of the supportability factor.  In his analysis, the ALJ noted that the questionnaire completed by each doctor "does not provide a clear rationale with evidence for each opinion about limitations." (R. at 19–20.)  This is a fair criticism because, as defendant argues, "forms that require the physician only to check boxes and briefly to fill in blanks are weak evidence at best."  (Opp'n Br. p.18 (citing *Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017) (internal punctuation and quotation marks omitted).)[5]

However, the ALJ then committed an error when further explaining why he found pain specialist Dr. Hassan's opinions to not be persuasive.  The ALJ stated that "the records from this medical provider do not appear to be supportive of such great limitations."  (R. at 20.)  However, the records cited for support by the ALJ are the examination notes of orthopedist Dr. Hassan and another doctor, Joshua Landa—not pain specialist Dr. Hassan.  (*Id.* (citing R. at 1823–54).)  This error means that the ALJ's conclusion about the supportability of pain specialist Dr. Hassan's opinions is not supported by substantial evidence.  *See Brownawell v. Comm'r Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) (ALJ's rejection of doctor's opinion based "in large part on evidence that does not exist … indicate[s] that the ALJ's decision to discredit [the doctor] was not supported by substantial evidence"); *Gleason v. Saul*, Civ. No. 19-3713, 2020 WL 1975378, at *6 (E.D. Pa. Apr. 24, 2020) ("Mistakes and factual errors are not substantial evidence to support an ALJ's decision.").  This error is harmful because the opinions of pain specialist Dr. Hassan, if not discounted, could have caused the ALJ to find that plaintiff has an RFC with

---

[5] Plaintiff counters that although the questionnaires did contain check boxes and blanks, the doctors supported their opinions with references to clinical findings, surgical reports, and diagnostic imaging.  (Pl.'s Br. pp.31–32, 36–37.)  I need not reach a conclusion as to whether the ALJ's failure to discuss these aspects of the questionnaires is error because other errors, on their own, merit remand.

greater limitations.   *See, e.g.*, *Jesus T. v. Kijakazi*, Civ. No. 20-20577, 2023 WL 4841624, at *8 (D.N.J. July 28, 2023) (King, Mag. J.) (declining to find harmless the ALJ's error in evaluating a medical opinion that could impact the RFC assessment).

When discussing the consistency factor of the doctors' opinions, the ALJ made a different type of mistake: he did not sufficiently develop the record or explain his reasons for discounting the opinions.   *See Jones*, 364 F.3d at 505. In his decision, the ALJ concluded that orthopedist Dr. Hassan's opinions are "somewhat consistent" with the overall record, which the ALJ characterized as showing that plaintiff is capable of light work.   (R. at 19.)   For support of this characterization, the ALJ cited two exhibits: two pages of examination notes by Dr. Landa in 2019 and two pages of examination notes by orthopedist Dr. Hassan in 2021.   (*Id.* (citing R. at 1560–61, 1823–24).)   The consistency of a medical opinion is assessed by comparing it "with the evidence from *other* medical sources and nonmedical sources." 20 C.F.R §404.1520c(c)(2) (emphasis added).   Therefore, as plaintiff points out, the examination notes of orthopedist Dr. Hassan are not appropriate to consider when assessing the consistency of the opinions of the same doctor. (Pl.'s Br. p.34.)   The examination notes of Dr. Landa cited by the ALJ, meanwhile, contain the observations that plaintiff "is in severe pain, mainly in his shoulders, but also in his neck"; that plaintiff "has not had relief with medications"; and that plaintiff "cannot sleep at night and is having a difficult time coping with the pain."   (R. at 1560.)   The ALJ does not explain how orthopedist Dr. Hassan's opinions about plaintiff's limitations are in any way inconsistent with Dr. Landa's observations.   Adding to the confusion, the ALJ does not explain how Dr. Landa's observations support the finding that plaintiff can perform light work.   In the absence of an explanation as to why orthopedist Dr. Hassan's opinions are purportedly inconsistent with other medical and nonmedical

sources, I cannot meaningfully review the ALJ's conclusion.   *See Jones*, 364 F.3d at 505.

The ALJ's discussion of the consistency factor when assessing the opinions of pain specialist Dr. Hassan suffers from the same flaw.   The ALJ concluded that pain specialist Dr. Hassan's opinions were "not consistent" with the record, citing the same two exhibits as in his discussion of the consistency of orthopedist Dr. Hassan's opinions.   (R. at 20.)   Here, the examination notes of orthopedist Dr. Hassan can appropriately be compared to the opinions of pain specialist Dr. Hassan.   However, the ALJ again failed to explain how pain specialist Dr. Hassan's opinions are inconsistent with the other medical and nonmedical sources.   Here, again, I lack the requisite access to the ALJ's reasoning and thus cannot meaningfully review his conclusion that the opinions of pain specialist Dr. Hassan are inconsistent with the overall record.   *See Jones*, 364 F.3d at 505.

Accordingly, remand is appropriate to require the ALJ to consider plaintiff's medical opinions consistent with the applicable regulations and this Opinion.   It may well be that the ALJ arrives at the same outcome.   However, the ALJ must provide additional explanation for his decision.

## II.   EVALUATION OF PLAINTIFF'S SUBJECTIVE SYMPTOMS

Social Security Ruling (SSR) 16-3p provides ALJs with guidance on how to evaluate a plaintiff's reported symptoms in a disability claim.   *See Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).[6]   The regulation directs ALJs to conduct a two-step process in which they (1) determine whether a claimant has a medically determinable impairment that could reasonably be

---

[6] Social Security Rulings are binding on all components of the Social Security Administration.   20 C.F.R. §402.35(b)(1); *see also Henderson v. Soc. Sec. Admin.*, 87 Fed. App'x 248, 251 (3d Cir. 2004).

expected to produce the claimant's alleged symptoms; and (2) once such an impairment is established, evaluate the intensity and persistence of the claimant's symptoms based on the record evidence as a whole. *Id*. at *3–5. Included in record evidence are the plaintiff's own statements about his symptoms, such as pain. *Id*. at *4, 6. The regulation specifies that "[w]e will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled." *Id*. at *5. It continues:

> We may or may not find an individual's symptoms and related limitations consistent with the evidence in his or her record. We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions.

*Id*. at *8.

Plaintiff argues that the ALJ failed to follow SSR 16-3p in evaluating his symptoms, primarily by failing to explain the conclusion that plaintiff was not credible about the extent of his symptoms. (Pl.'s Br. pp. 39–41.) In his decision, the ALJ stated the basic requirements of SSR 16-3p, recounted plaintiff's testimony about his enduring pain, and then concluded:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments reasonably could be expected to cause symptoms and limitations. However, to the extent that the claimant alleges that the intensity, persistence, and limiting effects of his conditions result in disability, this is not consistent with the evidence in the record.

(R. at 16.) The ALJ went on to recount the objective medical evidence in plaintiff's case, (R. at 17–19), but nowhere does the ALJ explain how that evidence undermines plaintiff's testimony or otherwise resume his discussion of plaintiff's symptoms.

I agree with plaintiff that the ALJ failed to follow SSR 16-3p by failing to explain why plaintiff's symptoms are "not consistent" with the record.   This omission is in clear contravention of the regulation, which explicitly states that the ALJ will explain his reasoning for such a conclusion.   *See* SSR 16-3p, 2017 WL 5180304, at *8.   Absent an explanation of the ALJ's reasoning, I cannot meaningfully review his decision.   *See Jones*, 364 F.3d at 505.   Accordingly, remand is also merited on this basis so the ALJ can evaluate plaintiff's subjective symptoms consistent with the applicable regulations and this Opinion.   *See, e.g.*, *Laroque v. Kijakazi*, Civ. No. 20-13003, 2022 WL 225515, at *9 (D.N.J. Jan. 26, 2022) ("[O]n remand, the ALJ should explain how he arrived at his determination regarding Plaintiff's subjective statements by specifying reasons for rejecting Plaintiff's allegations of pain and other symptoms and supporting his conclusion with concrete medical evidence in the record.").

## <u>CONCLUSION</u>

For the reasons stated above, the Commissioner's decision denying plaintiff's application for benefits is **VACATED** and **REMANDED** for further proceedings consistent with this Opinion.   An appropriate Order accompanies this Opinion.

*/s/ Edward S. Kiel*
EDWARD S. KIEL
UNITED STATES DISTRICT JUDGE

Dated: August 13, 2024